

THE ALLAN HOUSE
1104 SAN ANTONIO STREET
AUSTIN, TEXAS 78701

(512) 474-7677 | Phone
(512) 474-5306 | Fax

**ROSS • SCALISE**
**L A W   G R O U P**

**BRETT C. BEELER**
ATTORNEY AT LAW

BRETT@ROSSLAWGROUP.COM

July 28, 2020

***Via Facsimile and Electronic Mail***
(210) 281-2522
U.S. Equal Employment Opportunity Commission
San Antonio Field Office
5410 Fredericksburg Road, Suite 200
San Antonio, Texas 78229

       Re:    **Charge of Discrimination**
               Charging Party: Kayla Russ
               Respondent: Ettain Health
               Charge Number: To Be Assigned

Dear Sir or Madame:

       Please be advised that this firm represents Kayla Russ regarding the above-referenced matter. I have enclosed a Charge of Discrimination executed by my client which I request that you process in your usual manner.

       Please direct any future communication regarding this Charge to my attention. Thank you for your assistance.

                    Sincerely,

                    */s/Brett Beeler*

                    Brett C. Beeler

BCB/sjt
Enclosure

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | |

**Texas Workforce Commission Civil Rights Division** and EEOC

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Kayla Russ | 816-824-0789 | 02/08/1982 |

| Street Address | City, State and ZIP Code |
|---|---|
| PO Box 1034 Round Rock, Texas 78680 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Ettain Health | Over 500 | 704-525-5499 |

| Street Address | City, State and ZIP Code |
|---|---|
| 127 W. Worthington Ave, Ste. 100 Charlotte, North Carolina 28203 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 04/14/2020 | 04/14/2020 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began working for Respondent (formerly Leidos Health) on December 2, 2019 as the Team Lead on a project for client MedStar Health. At the beginning, I traveled to Maryland each week for the project, but then worked from my home office starting in March 2020. I had previously worked for Respondent on another successful project in 2016. I was a productive employee with no disciplinary history.

I received high praise by my managers at Respondent, Joe Barrett and Pamela Borsuk, and MedStar Health for my work with MedStar Health. Around March 2020, many consultants' contracts were terminated due to COVID-19, but MedStar Health kept me on, due to my performance and important role. In fact, although my contract was initially scheduled to end on May 29, 2020, MedStar Health and Respondent asked me to extend my contract through October 2020, as confirmed by Barrett on March 25, 2020. MedStar Health said they wanted me to work with them for as long as I wanted.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

| 07/23/2020 | | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 7/23/20 | STEPHANIE JANE TORRES My Notary ID # 132046524 Expires June 11, 2023 |
|---|---|---|---|
| Date | Charging Party Signature | | |

3

  
EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

**Texas Workforce Commission Civil Rights Division** and EEOC
*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On April 8, 2020, I had an emergency related to my mental health disability and was without access to my phone or computer. I checked into a behavioral hospital.

On April 13, 2020, I called Barrett multiple times from the hospital telephone line and left him a voicemail. We then spoke that day. I told Barrett that I reached out to MedStar Health and asked him to speak to MedStar Health as well to see what they needed from me.

On April 14, 2020, Barrett left me a voicemail. He terminated me and said that MedStar Health made the decision to terminate my contract.

However, upon information and belief, MedStar Health did not terminate my contract and wanted me to continue working on their project.

I believe that I have been discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990 (ADA), as amended, and the Texas Labor Code.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

07/23/2020
*Date* — *Charging Party Signature*

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

7/23/20

STEPHANIE JANE TORRES
My Notary ID # 132046524
Expires June 11, 2023

4

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.   **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Kayla Russ<br>P.O. Box 1034<br>Round Rock, TX 78680 | From: | San Antonio Field Office<br>5410 Fredericksburg Rd<br>Suite 200<br>San Antonio, TX 78229 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **451-2020-03040** | **Pamela Taylor,**<br>**Investigator** | **(210) 640-7558** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Travis G. Hicks,**
**Director**

For     4/15/2021

*(Date Issued)*

Enclosures(s)

cc:
| Craig Hopewell<br>Corporate Attorney<br>ETTAIN GROUP<br>127 W. Worthington Ave., Ste. 100<br>Charlotte, NC 28203 | Brett C. Beeler<br>ROSS SCALISE LAW GROUP<br>1104 San Antonio St<br>Austin, TX 78701 |
|---|---|

Enclosure with EEOC
Form 161 (11/2020)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



Enclosures(s)

cc:

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix,     and     other     ADA     related     publications,     available     at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include **the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➤ **Only one** major life activity need be substantially limited.
➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

*4*

| | | | | |
|---|---|---|---|---|
| ** SENDING NOTIFICATION : FAX SENT SUCCESSFULLY ** | | | | |
| TIME SENT<br>July 28, 2020 at 3:00:44 PM CDT | REMOTE CSID<br>2102812522 | DURATION<br>157 | PAGES<br>5 | STATUS<br>Sent |

# ROSS • SCALISE
## L A W   G R O U P

1104 SAN ANTONIO ST
AUSTIN TX 78701

PHONE 512 474-7677
FACSIMILE 512-474-5306

# FAX COVER SHEET

Date:    2020-07-28

To:

Attn:    EEOC San Antonio Field Office

Fax No:    (210) 281-2522

From:    Stephanie Torres

Total Pages:    5

RE:    Our Client: Kayla Russ

Comments:

*Confidentiality Notice: This transmission contains confidential information intended only for the use of the recipient named above. If you have received this facsimile in error, please notify us by telephone. You are cautioned that any disclosure, copying, distribution or other use of the transmitted information is prohibited. Thank you.*



THE ALLAN HOUSE
1104 SAN ANTONIO STREET
AUSTIN, TEXAS 78701

(512) 474-7677 | Phone
(512) 474-5306 | Fax

ROSS • SCALISE
L A W   G R O U P

**BRETT C. BEELER**
ATTORNEY AT LAW

*LICENSED IN TEXAS AND CALIFORNIA*
BRETT@ROSSLAWGROUP.COM

February 16, 2021

***Via EEOC Public Portal***
U.S. Equal Employment Opportunity Commission
Pamela D. Taylor, Investigator
San Antonio Field Office
5410 Fredericksburg Road, Suite 200
San Antonio, Texas 78229
Pamela.taylor@eeoc.gov

      Re:    **Rebuttal Statement**
              Charging Party: Kayla Russ
              Respondent: ETTAIN HEALTH
              Charge Number: 451-2020-03040

Dear Ms. Taylor:

      My client, Kayla Russ, provides the following rebuttal to the position statement submitted by Respondent Ettain Health ("Respondent" or "Ettain").[1]

      <u>Ettain's Contradictory Explanation for Terminating Ms. Russ is Clear Pretext</u>

      Ettain writes in its position statement that Ettain made the decision to terminate Ms. Russ, not MedStar— the client Ms. Russ was serving. However, when Ettain's Resource Manager and Ms. Russ' supervisor, Joe Barrett, terminated Ms. Russ, he stated that it was MedStar's choice. He said **"the client is going to be ending your engagement and moving on...** MedStar is going to be moving on." That voicemail is attached as Exhibit 1. These purported rationales are opposite.

      Defendants' shifting rationale for terminating Ms. Russ is well-established evidence of pretext. *See Apache Corp. v. Davis*, 573 S.W.3d 475, 501 (Tex. App. 2019) ("Davis also argues

---

[1] This rebuttal is submitted for the purpose of aiding the EEOC in its investigation and does not constitute a binding statement of Ms. Russ' claims or evidence. Nor is it intended to be used as evidence in court. Ms. Russ has not had an opportunity for full investigation or formal discovery and reserves her right to present new or additional information at a later date.

1

that evidence of pretext is found in the fact that Ricotta proffered different reasons to Davis for her termination than those he testified to at trial. We agree."); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext."); *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 413 (5th Cir. 2007); *Read v. BT Alex Brown Inc.*, 72 F. App'x 112, 120 (5th Cir. 2003).

### Ettain Regarded Ms. Russ as Having a Disability under the ADA

During her stay at the behavioral hospital, Ms. Russ and Barrett exchanged phone calls and voicemails.  Barrett saw the phone number that Ms. Russ called him from.  He also presumably called that number to speak with Ms. Russ and was informed that he was calling a behavioral health hospital.  Ettain was therefore well aware of Ms. Russ' need for disability leave.

Further, Courtney Colbert, Information Systems Manager for MedStar, emailed Ms. Russ on April 17, 2020 (three days after the termination).  Colbert wrote that "the team was thinking about you and hope you are doing well!"  That email is attached as Exhibit 2.  This indicates that Ettain communicated Ms. Russ' perceived disability to MedStar.

Ettain therefore regarded Ms. Russ as having a disability.  Under the 2008 ADA Amendments Act, this only requires evidence that an employee was subjected to an adverse action because of an actual or perceived impairment, whether or not the impairment limits or is perceived to limit a major life activity. See 42 U.S.C. § 12102(3)(A); 29 C.F.R. §§ 1630.2(g)(1)(iii) and 1630.2(l)(1).

### The Indefinite Nature of Ms. Russ' Industry Does Not Limit Her Claims

Ettain's discussion about the contractual nature of Ms. Russ' work is irrelevant.

First, Barrett confirmed to Ms. Russ that she had until the end of April 2020 to decide to continue working on the MedStar project "through October and maybe longer."  The text messages between Ms. Russ and Barrett are attached as Exhibit 3.

Barrett also mentions to Ms. Russ in Exhibit 3 that MedStar "love to keep you on the team."  Indeed, around March 2020, MedStar terminated the contracts of many consultants due to Covid-19, but MedStar Health kept Ms. Russ on due to her performance, dependability, and important role.  MedStar told Ms. Russ on multiple occasions that they wanted her to work with them for as long as she wanted.

Second, Ettain asserts that MedStar's input back to Ettain was that the position was not crucial enough to "backfill the position."  This is false, so it is not surprising that Ettain offers no evidence of this communication.  Ettain terminated Ms. Russ even though MedStar wanted her

to return and did not want somebody else.   On July 22, Colbert confirmed this to Ms. Russ.  An audio recording of that conversation is attached as Exhibit 4.  In the call, Colbert says MedStar was **"fine waiting until you were able to come back"**, that it "definitely wasn't our decision", and it was Ettain "telling us that basically you were not available to continue."

Third, because Ms. Russ was a W2 employee consultant for Ettain, the company would have presumably placed her on "the bench" and continued to employer her and look for new contracts for her to start on.

Courts are clear that the termination of a temporary contract is a termination and adverse employment action.  *Mooney v. Lafayette Cty. Sch. Dist.*, 538 Fed.Appx. 447, 453 (5th Cir. 2013) (holding that "non-renewal of [plaintiff's] contract constituted a termination of employment, an adverse employment action"); *Garrett v. Judson Indep. School Dist.*, 299 Fed.Appx. 337, 345 (5th Cir. 2008) (same); *Skaggs v. Van Alstyne Indep. Sch. Dist.*, 2017 WL 77825, at *17 (E.D. Tex. 2017) (same); *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trustees*, 2016 WL 9631308, at *5 (S.D. Miss. 2016), reconsideration denied and aff'd. (Defendant's argument that "non-renewal of an employment contract does not constitute an adverse employment action because... a contract-based employee has no expectation of employment beyond the terms of his or her contract... is without merit").

### Because MedStar Was Not Upset with Ms. Russ' Short Leave of Absence, Ettain's Termination of Ms. Russ was Nonsensical

As shown in Exhibit 2, Colbert and MedStar valued Ms. Russ greatly and, after her brief absence, told her it did not "think of you any less and would welcome you back."

In its position statement, Ettain shares the April 13, 2020 email from MedStar where MedStar was "checking on the status of Kayla Russ."   Ettain then claims that MedStar "expressed their dissatisfaction" about Ms. Russ' unannounced leave and then "were extremely pleased with how we handled the situation."  However, Ettain fails to provide any proof of these allegations.  Instead, all evidence indicates that MedStar simply assumed that Ms. Russ had an emergency or contracted Covid-19 and was completely fine waiting for their star consultant to return.  **We ask that the EEOC obtain from Ettain all correspondence between Ettain and MedStar regarding Ms. Russ' absence and termination.**

It is nonsensical that MedStar would terminate Ms. Russ for business reasons when Ettain was happy to continue paying Ettain for Ms. Russ' valuable services.  Ettain made its decision based not on a lack of business, but on disability stereotyping.  That is discriminatory.

In light of the evidence in Ms. Russ' charge and detailed above, we ask that the Commission make a finding of discrimination in this matter.  Thank you for your time and attention.

**Russ Rebuttal Statement**
**February 16, 2021**
**Page 4 of 4**

Sincerely,

*/s/ Brett Beeler*

Brett Beeler
Ross-Scalise Law Group

Enclosure